## MANN vs. ECKFORD'S EXECUTORS.

The capital stock of an *insurance company* may be invested in *bonds and
mortgages* executed directly to the company or obtained by assignment,
where the charter does not expressly prescribe the mode of investment,
but impliedly gives the power to invest in stocks.

Securities taken by such company, at a *place* different from that where by
necessary intendment its proper business should be transacted, may be
enforced ; although it be shown that the company has an office for the
transaction of business at the place where the securities are taken, if there
be no proof that the business there carried on is unauthorized.

Since the statute declaring that the *seal* to a written instrument shall be
only presumptive evidence of consideration, a *failure* of consideration
may be proved, and *it seems* a defence may be set up which, previous to
the statute, was not available at law ; but the *want of consideration,* in
whole or in part, of a sealed instrument created previous to the revised
statutes cannot be shown to defeat a recovery.

A party who, under seal, acknowledges that another has paid a certain sum
of money as the consideration of the assignment of a bond, the payment of
which he guarantees, is estopped, *it seems,* from subsequently showing,
by proof, that the amount paid was greatly less.

Where a party, by bond, guarantees that a third person shall pay a certain
sum of money by a given day, as secured by the obligation of such third
person, the grantor, in an action against him, is not at liberty to show
that the obligation of the third person was assigned to the plaintiff by an
insurance company *in contemplation of insolvency ;* none but *creditors* and
*stockholders* of such an institution can avail themselves of the statute
provided for such cases.

Nor can a defendant in such case show that the obligation of the third per-
son is invalid on the ground of *usury.*

Nor can he, *on the trial of the cause,* require the production of the obliga-
tion of such third person.

The plaintiff, in such case, must assign the non-payment of the money as a
breach of the condition of the bond sued upon ; but he is not bound to
give evidence of the extent of his damages ; the condition of the bond
showing the amount he is entitled to recover, the jury are warranted in
giving the whole sum claimed, provided it do not exceed the amount
specified in the condition.

Nor is it incumbent upon the plaintiff to prove a *demand of performance* upon
the principal debtor, and notice of non-payment to the guarantor, where

the engagement of the latter is absolute and unconditional, that the former shall pay at a given day.

If the engagement be such as to require a previous demand and notice, the defendant cannot, *on the trial*, require proof of the facts, where there is no averment in the declaration under which the proof can properly be given; the remedy is by motion in arrest, or by writ of error.

But if there be such averment, the plaintiff is not bound to prove it, where the defendant pleads only *non est factum*; such plea puts in issue only the execution of the bond.

Under a general objection at the circuit, a party is not at liberty, on an application for a new trial, to urge grounds in support of his motion which were not distinctly presented at the circuit.

UTICA,
July, 1836.

Mann
v.
Eckford's Executors.

THIS was an action of *debt*, tried at the New-York circuit in October, 1834, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiff,*as receiver*, appointed by the court of chancery, of the property and effects of *The Western Insurance Company of the village of Buffalo*, declared on a bond executed to that company by Henry Eckford, the testator, bearing date 17th July, 1826, which, after reciting that the Western Insurance Company of the village of Buffalo, *had paid the money for a bond* made by Thomas Gibbons, in the penal sum of $50,000, bearing date 2d December, 1825, conditioned for the payment of $25,000, on or before the second day of December next thereafter, with interest, payable half yearly, and, *also for a mortgage* executed by Gibbons, as collateral security for the payment of the bond, was conditioned that if Gibbons should punctually satisfy and pay to the Western Insurance Company, of the village of Buffalo,*the amount paid by the said company, being the amount mentioned in the said bond*, with interest, as the same should fall due, according to the tenor thereof, then the obligation of Eckford to be void, &c. After setting forth the making of the bond, and the condition thereunder written, the plaintiff assigned as a *breach*, that Gibbons did not on the 2d December, 1826, *punctually pay* and satisfy, nor had he yet (at the time of the commencement of the suit) paid and satisfied to the company, nor to the plaintiff, as receiver, the amount paid by the company, being the amount mentioned in the condition of the bond executed by him, with the interest, according to the tenor of his bond; nor did

UTICA,
July, 1836.

Mann
v.
Eckford's Executors.

Eckford, in his lifetime pay, nor had the defendants, since his death, paid the same, &c. By means whereof the plaintiff *had sustained damages to the amount of* $20,000, whereby an action had accrued, &c. The defendants pleaded *non est factum*, and subjoined to their plea a notice of various matters intended to be given in evidence on the trial of the cause, viz : 1. That Eckford, in his lifetime, and the defendants, since his death, *did not owe* any thing to the plaintiff; 2. That the bond executed by Gibbons was given to *The Life and Fire Insurance Company* of New-York, setting forth the powers conferred upon that company, and the limitations and restrictions imposed by the charter, and then alleging that the bond of Gibbons was executed to secure the repayment of certain notes issued to him, *without authority of law*, by that company, and that the bond, therefore, was void ; charging the Western Insurance Company with notice of the consideration of the bond ; 3. That the bond executed by Gibbons was *usurious*, setting forth certain facts which would be relied on in support of such defence ; 4. That the Western Insurance Company did not obtain the bond of Gibbons in the course of its lawful dealings, or in a manner authorized by law ; that the company did not pay the money for the bond, as recited in the same, and that the recital was fraudulently inserted to estop the obligator and his representatives from questioning the true consideration which passed from the Western Insurance Company to the Life and Fire Company, which was an illegal consideration ; 5. That the Western Insurance Company of the *village of Buffalo*, illegally established an office for the transaction of business *in the city of New-York*, and there *discounted notes*, and *carried on banking business ;* that the company purchased and dealt in the notes of *The Life and Fire Company*, and on the 17th July, 1826, (the date of the bond declared on) held such notes to a large amount, received much below par, and that on that day The Life and Fire Company being about to stop payment and whilst in the contemplation of insolvency, The Western Insurance Company received the bond of Gibbons without paying any money therefor on that day, or at any time thereafter ; the consideration, if any, being *antecedent* transactions, which were *illegal* and *void*, by reason that neither of the

companies had authority by law to engage in such transactions ; 6. That the bond of Eckford was executed as a *device*, to prevent any defence which might have been interposed to a recovery upon the bond of Gibbons ; and 7. That the bond of Eckford was without consideration, and intended as a *cover* to usurious transactions between The Life and Fire Company and The Western Insurance Company, and was executed, and the bond of Gibbons transferred, in pursuance of the corrupt agreement between the two companies.

On the trial the plaintiff proved the bond declared on, and rested. The counsel for the defendants moved for a nonsuit, on the following grounds : 1. That the plaintiff ought to have proved a demand of payment upon Gibbons, and notice of non-payment to Eckford, or his representatives ; 2. That the plaintiff ought to have produced in court the bond and mortgage of Gibbons ; and 3. That the plaintiff had not shown any title in The Western Insurance Company to the bond and mortgage of Gibbons. The motion for a nonsuit was denied. The counsel for the defendants then insisted that the plaintiff was bound to have his *damages assessed* according to the statute, and as the case then stood was entitled to recover only *nominal damages*. The judge ruled, that under the plea of *non est factum* the breach assigned in the declaration was admitted, and the plaintiff was entitled to recover $20,000, being the damages *averred* in the declaration. The plaintiff said he claimed only $16,389,97, the residue of the $25,000 having been realized on a foreclosure of the *mortgage* given by Gibbons.

The counsel for the defendants having opened their defence, the counsel for the plaintiff objected to it as inadmissible under the pleadings : whereupon the following decisions were made by the judge : 1. That the consideration of the bond and mortgage executed by Gibbons could not be inquired into in this suit, and that evidence that the obligations were usurious was inadmissible ; 2. That proof that the bond and mortgage of Gibbons was transferred by the Life and Fire Company in contemplation of bankruptcy was also inadmissible ; 3. That the validity of the transfer of these securities *upon any other grounds* could not be inquired into ; and 4. That no in-

UTICA,
July, 1836.

Mann
v.
Eckford's Executors.

quiry could be made whether there was any consideration for the transfer, or whether the transfer was for an antecedent debt, or what was the state of the accounts between the two companies ; to all which decisions the counsel for the *defendants* excepted. The judge also decided 5thly, that it was competent to the defendants to show that the subject matter of the bond declared on was not within the scope of the powers granted to the Western Insurance Company, and 6thly, that the *seal* affixed to the bond was only *prima facie* evidence of consideration, which the defendants might rebut by showing a *want* or *total failure* of consideration—to the two latter decisions the *plaintiffs'* counsel excepted. The defendants offered to prove the several matters which the judge had ruled to be inadmissible, which evidence the judge refused to receive, and an exception was accordingly taken. The defendants next read in evidence an *answer in chancery of The Western Insurance Company* to a bill filed against them by certain individuals in behalf of themselves and others, stockholders and creditors of *The Life and Fire Insurance Company*, detailing the transactions between the two companies, and acknowledging the transfer of Gibbons' bond and mortgage, together with the delivery of the bond of Eckford guaranteeing the payment of the bond of Gibbons ; alleging, however, that they received the transfer and guaranty *before the Life and Fire Insurance Company had stopped payment, and while the company contemplated and intended to continue its payments,* and that the transfer and guaranty were received as a means of assisting or enabling The Life and Fire Insurance Company to continue its payments. The Western Insurance Company further stated in that *answer,* that the origin of their claim against *The Life and Fire Insurance Company* was for advances made to that company at various times, between 25th February and 15th July, 1826, amounting in the whole to the sum of $48,127,78, for which they received their bonds, and that the whole of that sum remained due, except so far as payments had been received on securities transferred. *The Life and Fire Insurance Company* stopped payment on the 18th July, 1826, and the defendants *offered to prove* that after that day the assistant president of *The Western Insur-*

*ance Company* returned or offered to return bonds of The Life and Fire Insurance Company to the amount of $20,000, and to deliver the same to the *receiver* appointed by the court of chancery to take charge of the property and effects of The Life and Fire. The plaintiff objected to this evidence as inadmissible, and the judge sustained the objection ; ruling that by the tenor of the guaranty, Eckford was bound to pay the whole amount of the bond and mortgage executed by Gibbons ; that the recovery did not depend upon the amount paid or advanced by The Western Insurance Company for or upon the bond and mortgage, the plaintiff being entitled to recover the whole amount of the bond and mortgage, and his right to recover could be defeated only by showing *an entire failure of consideration.* The defendants then *offered to prove* that the whole amount of the consideration paid by *The Western Insurance Company*, for or on account of Gibbons' bond and mortgage, was $13,500 ; that it was paid *to* The Life and Fire Insurance Company, and that *no other consideration* passed between Eckford, the guarantor, and *The Western Insurance Company :* which evidence was objected to and rejected. The defendants proved that *The Western Insurance Company* organized under their charter in 1825, and that the officers of the company consisted of a president and assistant president, a secretary, an assistant secretary and a board of directors. The president, assistant president and assistant secretary resided in the city of New-York, and the secretary and a majority of the board of directors resided in Buffalo, and that the company kept offices and transacted business at both places. The judge charged the jury that the plaintiff was entitled to a verdict, and to have his damages assessed at the sum claimed by him. The jury found accordingly. The defendants move for a new trial.

The case was argued by

*F. B. Cutting & D. Selden,* for the defendants.

*H. R. Storrs & S. Sherwood,* for the plaintiff.

*By the Court,* BRONSON, J. One of the grounds on which the defendants moved for a nonsuit was, that the plaintiff was bound to prove a demand upon *Gibbons* for the payment of the money secured by the bond and mortgage, and that notice of the non-payment had been given to *Eckford,* or his executors. In actions upon the contract of guaranty it is sometimes necessary to aver and prove a demand of payment from the principal debtor, and notice of the non-payment to the guarantor. *Mechanic Ins. Co.* v. *Ogden,* 1 *Wendell,* 137. *Douglass* v. *Reynolds,* 7 *Peters,* 126. 3 *Wheaton,* 154, *note.* But I think no demand was necessary in this case. The bond and mortgage of *Gibbons* were dated on the 2d of December, 1825, and the money was payable on the 2d of December, 1826. On the previous 17th of July, *Eckford's* bond was executed, and was conditioned that *Gibbons* should *punctually satisfy and pay the money.* The undertaking was absolute that *Gibbons* should pay at the specified time; and there was nothing either in the terms of the contract or the nature of the transaction which imposed on the creditor the duty of seeking the principal debtor. *Allen* v. *Rightmere,* 20 *Johns. R.* 365. Although a surety is in some things favorably regarded in the law, his contract, like that of every other person, must be interpreted according to its natural and most obvious import. If he make an unconditional engagement for the act of a third person, the contract will be broken if that person fails to do the act. A qualification of the agreement, though not expressed in terms, may sometimes be inferred from the special circumstances of the case; but here there is no ground for such an inference. The obligor agreed that his bond should be forfeited if *Gibbons* did not pay at the day. He might have limited his undertaking in such a manner that he would only be answerable for any deficiency after a foreclosure of the mortgage, and a resort to *Gibbons* on his personal obligation; but he has made a different contract, and must abide the legal consequences. It was his duty to pay the debt immediately on the default of the mortgagor; and then he would have been substituted in the place of the creditor, with the right to resort to *Gibbons* on the bond and mortgage for his indemnity. *Classon* v. *Morris,* 10 *Johns. R.* 539. *Hayes* v. *Ward,* 4 *id.* 129.

But if a demand of *Gibbons* and notice to *Eckford*, were necessary to the plaintiff's right of action, proof of those facts could not have been required on the trial.   No demand or notice is averred in the declaration, and, as a general rule, the party is only bound to make out his case as he has alleged it in pleading.   It is true that, on a motion in arrest of judgment, after verdict for the plaintiff, the court will presume that some things, not directly alleged in the declaration, were proved on the trial ; and in the cases to which this presumption extend, the judge at the circuit ought to require the evidence to be given.   But the presumption does not extend to a case where an averment like the one under consideration has been wholly omitted.   Where a good title is defectively set forth, and where the facts omitted may be fairly implied from those alleged, or are so connected with them that the facts alleged could not be proved without proving those omitted, there it will be presumed, after verdict, that the defect in pleading, was supplied by proof on the trial.   *Addington* v. *Allen*, 11 *Wend.* 374.   *Rushton* v. *Aspinall*, *Doug.* 679. *Tidd's Prac.* 950.   The case in *Douglas* goes directly to the point under consideration.   It was an action against the *endorser* of the bill of exchange, and the declaration did not allege a demand of payment from the *acceptor*, nor notice of non-payment to the defendant.   This was adjudged a fatal defect after verdict, and the judgment, which had been rendered for the plaintiff, was reversed for that cause.

There is still another answer to the objection that no demand upon *Gibbons* was proved.   If a demand had been averred in the declaration, the plaintiff would not have been bound to prove it.   The plea of *non est factum* puts in issue nothing but the execution of the deed on which the action is brought ; and, as a general rule, neither party can be either required or permitted to go beyond the issue joined.   10 *Johns. R.* 47.   12 *id.* 337.   14 *id.* 89.   9 *Cow.* 307.   10 *Wendell* 202.

The next ground for asking a nonsuit was, that the plaintiff had not produced the bond and mortgage of *Gibbons*, nor accounted for their non-production.   I can perceive no foundation for this objection.   The plaintiff had not counted upon

those securities, and they did not constitute any part of the evidence which he was bound to give for the purpose of maintaining the issue. He had nothing to prove but the execution of the bond. Cases were cited to show that where a suit is brought upon the original consideration for which a promissory note has been given, the plaintiff cannot recover without producing and cancelling the note on the trial. But they have little to do with the present enquiry. It was suggested, as the principal reason for requiring the production of the bond and mortgage, that it might have appeared that the money had been paid; and that the defendants have the right to be substituted in the place of the plaintiff in relation to those securities. It is a sufficient answer to the suggestion of payment, that no such defence was set up by the defendants, either in their plea or notice of special matter; and had such an issue been made, it may be doubted whether the plaintiff would be bound to furnish the defendants with evidence to maintain it. If payment by *Gibbons* had been pleaded, the burden of proving it would have rested on the defendants. On a proper application, they might have had a discovery from the plaintiff in relation to their defence; but they could have no right to call on the plaintiff, upon the trial, to admit any fact or to furnish them with the means of establishing it. In relation to the other branch of the suggestion, there can be no doubt that a surety who pays the debt of his principal, has the right to be substituted in the place of the creditor. But the right of substitution only arises on *payment* of the debt—not while the surety is resisting the payment. When the defendants have discharged their obligation, they may call on the plaintiff to put them in possession of the bond and mortgage of *Gibbons*, but not before. If the creditor has put it out of his power to make the substitution, that will in some cases discharge the surety; but no such defence was set up on this occasion.

The only remaining ground on which the motion for a nonsuit was made is, that the plaintiff had not shewn any title in the *Western Insurance Company* to the bond and mortgage of *Gibbons*. What was meant by this general objection, when it was taken on the trial, or how the circuit judge un-

derstood it, I am unable to say; but the questions which the counsel raised on the argument could not be very likely to occur to the mind of any one without a specification. Indeed, one of the questions discussed under this head could not have been considered on the motion for a nonsuit, for the fact on which the question is based had not at that time been proved. The most obvious meaning of the objection, as it was taken on the trial, was, that no *assignment or transfer* of the bond and mortgage to the company had been proved. That ground is now abandoned, and in its place we have two others: first, that the company had no power to take the bond and mortgage; and second, that the transaction was illegal and void, because the business was done at an office kept by the company in the city of *New-York*. The party is not at liberty to make general objections at the circuit, and then seek to overturn the decision of the judge upon grounds which were not distinctly presented to his mind. A case or bill of exceptions need not contain the arguments in support of any position taken on the trial; but it should show that the particular question which the party intends to discuss was made and decided at the circuit. This course is due alike to the judge who tries the cause, the party whose interest may be effected, and the court which may be required to review the proceedings.

Although the question growing out of the *place where the business was transacted* had not arisen at the time of the motion for a nonsuit, evidence on that subject was given near the close of the trial, and the judge may have intended to decide it in his charge to the jury that the plaintiff was entitled to a verdict. It may therefore be proper to examine it; and although the right of the defendants to raise the other question discussed on the argument may be doubted, I will consider that also. Had the *Western Insurance Company* power to take the bond and mortgage? The company was incorporated in 1817. 4 *Laws of N. Y.* 192, (*b*). The capital was not to exceed $400,000. The corporation was made " capable of *purchasing*, holding and conveying any estate, real or personal, for the use of the said corporation, subject to the restrictions herein after mentioned." §1. The *restrictions* were

UTICA,
July, 1836.

Mann
v.
Eckford's Executors.

that the corporation should not deal in goods, stocks, &c., nor engage in banking, nor make contracts for the payment of money, unless under seal. § 11. And further, " the lands, tenements and hereditaments which it shall be lawful for the said corporation to *hold*, shall be only such as shall be requir-ed for its immediate accommodation in relation to the con-venient transaction of its business, or such as shall have been or may be *bona fide mortgaged to the said company by way of security*, or which may be conveyed to it in satisfaction of debts previously contracted in the course of its dealings," &c. All lands not held for the immediate accommodation of the company or *by way of mortgage*, were to be sold and disposed of within five years after the corporation acquired a title to the same. § 10. The president and directors were authoriz-ed to make by-laws " touching the management and disposi-tion of the stock, property, estate and effects of the corpora-tion." § 7. There was no special provision in relation to the mode of investing the capital ; but the 11th section, in impos-ing restrictions on the power of the company, contained an implication in favor of buying stock, by way of securing the capital, or some part of it, and of selling the stock to pay debts. It also contained an implication in favor of taking the pledge of stock, by way of security for debts. I can perceive no rea-son to doubt the power of the company to invest the whole or any part of its capital, by way of loans on bond and mortgage, or to reinvest any portion of it in the same way, whenever it should become necessary or convenient to do so. The corpo-ration has power to *purchase, hold*, and *convey* real estate, but cannot *hold* for an indefinite period, save such lands as may be necessary for its immediate accommodation, or such as shall be *mortgaged* by way of security. The charter was granted in 1817, but no time was fixed for the organization of the company. *Comstock*, the president, testified that the organization took place in 1825, and these securities were taken in July, 1826, when the company probably had capital to be invested. Whether the corporation could make loans for any other purpose it cannot be necessary to inquire ; for it will not be presumed, in the absence of all proof of the fact, that this was an illegal transaction. The strict rule which

prevails in relation to the powers of corporate bodies is salu-
tary in its influence, and ought not to be relaxed ; but there
is no principle upon which an act, apparently within the le-
gitimate authority of a corporation, should be presumed to
have been done for an illegal purpose. This corporation
had power to lend its capital on bond and mortgage, and to
take mortgages by way of security for debts ; and if these se-
curities were taken for some other purpose, it was incumbent
on the defendants to prove the fact. If the company had
power to take the bond and mortgage directly from *Gibbons*,
it was not suggested that they could not take those securities
by way of assignment.

Did the fact that these securities were taken at an office
kept by the company. in *New-York* render the transaction
illegal ? This is not like the case of *The People* v. *Geneva
College*, 5 *Wendell*, 211. The college was founded for the
education of youth *in the village of Geneva*, and they claim-
ed as a franchise the right to establish a medical faculty *in
the city of New-York*. The court held that they had no
such right. In the case under consideration the name of the
corporation is, " The Western Insurance Company *of the
Village of Buffalo ;* subscriptions to the capital stock were
to be opened in that place ; notice of the first election was
to be given, and the elections for directors were to be held
in that village. Beyond this there was nothing to fix the lo-
cation of the corporation. Whatever limitation in relation
to other matters may be implied, I think the company might
loan its capital on bond and mortgage in any part of the state ;
and the fact that the business was transacted at an office kept
by the company in *New-York*, will not invalidate the secu-
rities. It does not appear that the office in *New-York* was
established for the purpose of banking, or doing any other
act beyond the powers of the corporation ; and should it be
granted that the company had no right to keep an office in
*New-York* for any purpose, still, if the act of taking the bond
and mortgage at that place was in itself legal, I doubt wheth-
er it could be avoided merely because the business was trans-
acted in an unauthorized office. The defendants should, at
the least, have proved that some business was done at the

*New-York* office, which the company had no authority to transact in that city.

Another question was mentioned on the argument, to wit, that the company had no power to take from Mr. *Eckford* this collateral undertaking for more effectually, securing the payment of the money mentioned in the bond and mortgage. But as this point does not appear to have been made or even hinted at on the trial, I do not think it should be considered in this place. There can never be an end of legal controversies, if the parties are permitted to discuss questions in a court of review, which they omitted to make at the proper time.

The decision of the judge in relation to the amount of damages to be assessed was correct. As the condition of the bond was not simply for the payment of money by the obligor, it was necessary to assign a breach. It was a collateral undertaking for the act of a third person. 2 *R. S.* 378, § 5. The act to be performed by *Gibbons* was the payment of a *specified sum of money* at a particular time. The declaration alleged that he had not paid it. The defendants did not plead to or in any way deny the allegation ; and, according to well established principles in relation to pleadings, the fact of non-payment was admitted. There could be no question about the extent of the plaintiff's damages. He was entitled to *the specified sum*, and would have recovered that amount, if he had not laid his damages at a smaller sum in his declaration, and if he had not voluntarily consented on the trial to limit still further the extent of his recovery. This bond was not like one conditioned to build a house, or do any act other than the payment of money. In cases of that description, the jury cannot see from the condition itself, nor ascertain by mere computation what damages the plaintiff has sustained ; and evidence on that subject must therefore be given, if the party wishes for any thing more than nominal damages. The cases already referred to sufficiently prove that the plea of *non est factum*, standing alone, admits every material allegation in the declaration, except the execution of the deed on which the action is founded. If the debt of Gibbons had been paid either in whole or in part, the defendants should have pleaded or given notice of that fact ; and

even then the burden of proof would have rested on them ;
and if they gave no evidence, the damages must have been
assessed as they were on the present occasion.   The only
alteration made by the revised statutes from the former rule
in relation to bonds of this description, is that which requires
the breaches to be assigned *in the declaration.*  Formerly they
might in some cases be assigned in the *replication,* or they
might be *suggested* on the record where the plaintiff had judg-
ment on demurrer, or by confession or *nil dicit.*  1 *R. L.* 518,
§ 7.   When a breach is assigned in the declaration, that like
any other material averment which the defendant does not
controvert, is admitted.   It is said, however, that the breach
assigned in this case does not allege that the money has *nev-
er* been paid, but only that it was not *punctually* paid.   It
must be admitted that the pleader has followed very closely
the language of the condition ; but I think the breach, though
somewhat informally drawn, is sufficient in point of substance.
It alleges that *Gibbons* did not punctually pay, *nor hath he
yet paid* the amount mentioned in the condition of his bond,
with interest as the same fell due, according to the tenor
thereof.   The pleader evidently intended to allege that the
money had *never* been paid, neither on the day nor at any
other time ; and if the concluding words, " according to the
tenor thereof," are necessarily repugnant to the previous alle-
gation, they may be rejected.   1 *Chitty's Pl.* 253.

The decision that the defendants could not inquire into
the original consideration of the bond and mortgage of *Gib-
bons,* or prove them usurious, was clearly right.   The plain-
tiff is not seeking to enforce those securities, but the contract
of Mr. *Eckford,* by which he engaged that the money men-
tioned in the bond and mortgage should be paid.  If the bond
and mortgage were void for usury, Mr. *Eckford,* who was the
president of *The Life and Fire Company,* may probably have
known it ; but there is no evidence that *The Western Insur-
ance Company* knew it.  That company took a contract which
covered all contingencies by which they might fail of receiv-
ing the money from Gibbons.   Such a contract the testator
made ; and he might as well set up the defence that the mort-
gage estate was inadequate to pay, or *Gibbons* insolvent, as

UTICA,
July, 1836.

Mann
v.
Eckford's Ex-
ecutors.

to allege that the securities were invalid. As the counsel who closed the argument on the part of the defendants was understood to give up this point, I will not examine it any more at large.

The judge decided that evidence was inadmissible to show that the transfer of the bond and mortgage of *Gibbons* by *The Life and Fire Company* was made in contemplation of insolvency. The act to prevent fraudulent bankruptcies by incorporated companies, *Laws of* 1825, *p.* 448, declares void all transfers and assignments of the property of a corporation made in contemplation of insolvency. § 6. But the act was made for the protection of the *creditors* of the corporation. It avoids all preferences, and secures an equal distribution of the property among the *creditors*, in case of insolvency. § 17. The act contains some few provisions for the safeguard of stockholders against the unwarrantable acts of the officers of a corporation; but the leading object was the protection of *creditors*. Upon what principle, then, can the defendants set up this objection? *Eckford* was not a *creditor*; he was one of the actors in making this transfer. The transfer, if void, is void as against the creditors of *The Life and Fire Company*; but they do not complain. The defendants do not represent them, and cannot, I think, be allowed to stand on this defence. It is not unlike the case of a deed made to defeat creditors, which is good as against the grantor and all others who are not creditors. If the assignment was made in contemplation of insolvency, there was no offer to prove that the officers of *The Western Insurance Company* knew that fact; and I remark once more, that they took a contract which covered all the contingencies by which they might fail to receive the money from *Gibbons*. It may be proper here to notice that the defendants, notwithstanding the decision of the judge, afterwards gave evidence on this question; but it was evidence directly contradicting the pretence that this assignment was made in contemplation of insolvency. They read the answer of *The Western Insurance Company*, which stated that the transfer was made before *The Life and Fire Company* stopped payment, " and *while* the said company, its officers and agents, *contemplated and intended to continue its pay-*

*ments, and as a means of assisting or enabling it to do so."* This leads to another remark. It does not appear upon what particular offer of evidence the judge decided the points of law on which the defendants now principally rely. The case states that they opened their defence to the jury, and were proceeding to call witnesses to controvert the plaintiff's claim, when the plaintiff objected that the defendants, under the pleadings, could not go into the proof offered ; whereupon the judge laid down some five or six legal propositions. One of them was, that the defendants could not give evidence to show that the transfer of the bond and mortgage was made in contemplation of insolvency ; and yet, when evidence on that question was afterwards offered, it was admitted. The fact may be otherwise, but it looks very much as though the judge was asked to decide a number of abstract questions of law, and not to determine whether some particular evidence which the party proposed to give was or was not admissible. What was intended by the decision of the judge that the validity of the assignment upon any other grounds could not be inquired into, I am unable to say. He had just decided, that evidence was inadmissible to prove that the assignment was made in contemplation of insolvency ; and when he added the remark under consideration, he probably meant that the transfer could not be impeached on any other grounds *of a similar character.* If more than this was intended, and the party had in truth offered any evidence of a different character, I think he should have specified what that evidence was in particular. It will not do to make a general remark, which is well founded in one point of view, the basis of a particular objection of another kind, which may not have been presented to the mind of the judge on the trial. Proving that the assignment was made in contemplation of the insolvency of *The Life and Fire Company* would not affect the plaintiff's claim, for the reasons which have already been given ; and there possibly may have been " other grounds" on which the transfer would be illegal and void on the part of *The Life and Fire Company,* without prejudicing the plaintiff's right to recover in this action.

UTICA,
July, 1836.

Mann
v.
Eckford's Executors.

The next general remark of the judge on the defendants' opening was, that the question whether any consideration passed from *The Western* to *The Life and Fire Co.* for the bond and mortgage, or whether the same was transferred to pay an antecedent debt, and also any inquiry into the state of the accounts between the two companies, could not be gone into. The judge evidently did not intend to be understood as saying that no question could be made whether any consideration had *at any time* passed between the two companies for the bond and mortgage, but only that it was immaterial whether the consideration passed *at the time of the assignment,* or whether the transfer was made to pay an *antecedent debt.* He decided immediately afterwards that the defendants might show a total failure of the consideration of the bond of the testator; and the defendants subsequently read the answer of *The Western Company,* which showed that most, if not all, of the consideration for the assignment of the bond and mortgage had been paid before the transfer was made. After reading the answer of *The Western Company,* which showed that the sums paid by them to *The Life & Fire Company* greatly exceeded the amount of the bond and mortgage of *Gibbons,* the defendants offered to prove that the amount actually paid by *The Western Company* was less than the bond and mortgage, and only amounted to $13,500; that this money was paid to *The Life & Fire Company,* and that no other consideration passed between *Eckford* and *The Western Company.* The judge overruled this evidence, and held that the amount of the recovery did not depend on the amount paid by *The Western Company* for the bond and mortgage; and that the right of the plaintiff could only be defeated by showing an entire failure of the consideration. Before the revision of the laws in 1830, it is entirely clear that the defendants could not have enquired into the consideration of the testator's bond, except for the purpose of showing that it was *illegal.* The mere *want* or *failure* of consideration would have constituted no answer to the action. 20 *Johns. R.* 134. 9 *Cow.* 307. It is now provided, that in every action upon a sealed instrument, the seal thereof shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same man-

ner and to the same extent as if such instrument were not sealed. There must, however, be a plea or notice with the general issue, or the defence will not be admitted. 2 *R. S.* 406, § 77, 78. This new rule of law has been applied to sealed contracts made before the statute was passed. In *Case* v. *Boughton*, 11 *Wend.* 106, the defendant pleaded the *failure* of the consideration on which a sealed note was given in 1829, and the plea was held good. In *McCurtie* v. *Stevens*, 13 *Wend.* 527, it was remarked by Mr. Justice *Nelson*, that the statute only altered a rule of evidence, and did not impair the contract. It gave to the defendant a new defence in law, the benefit of which was before available only by means of a cross action, or in another forum. The question in this case also arose on the alleged *failure* of the consideration. So far as this statutes goes only to the *remedy* of the contracting parties, there can be no very great evil in applying it to sealed obligations executed prior to the revision. But in making the application, care must be taken that we do not go beyond the form of the remedy, and interfere with the obligation of the contract. It is a familiar principle in jurisprudence, that a statute shall not have a retrospective effect so as to destroy a vested right; and this principle of natural justice, so far as it relates to " the obligation of contracts," is recognized and enforced by the constitution of the United States. This statute must, I think, receive a more restricted construction when applied to antecedent agreements under seal, than it will require in relation to contracts entered into since the act was passed. Should it be construed to reach every possible question of consideration on sealed instruments, made before the year 1830, it will, in some cases, be brought into conflict with a principle which it cannot withstand. In *Case* v. *Boughton*, the statute only went to the remedy. The action was on a sealed note, given on the sale of a horse. The defence was, failure of the consideration. The plaintiff had made a false warranty and fraudulent representations concerning the soundness of the horse. Before the statute, the plaintiff would have recovered upon his sealed obligation; and the defendant might have sued and recovered damages on account of the warranty and fraud. The only effect of applying the stat-

ute to that case was, to adjust the whole controversy in one action, instead of having cross suits. It may also be proper to construe the statute so as to give a defence where the party had before no remedy at law, but only in a court of equity. But of this I think there may be some doubt. It will be time enough to decide the question when it shall arise. The defence set up in this case was not the failure, but an original want of consideration. If the defendants, under the decision of the judge, had succeeded in making out that there was a total want of any such consideration as would be necessary to support a simple contract of the same character, this sealed instrument, independent of the statute, would, nevertheless, have been valid at law, and the defendants must have answered for the default of *Gibbons*, according to the contract of their testator. *Livingston* v. *Tremper*, 4 *Johns. R.* 416. The agreement was not only valid at law, but the obligor could not have been discharged from it by a court of equity. The total absence, or the inadequacy of consideration, may be important circumstances in ascertaining whether there was fraud in obtaining the contract; and courts of equity have sometimes refused to lend their aid and decree *the specific performance* of an agreement which was not founded upon a sufficient consideration. But in the absence of all fraud, and where there is nothing in the relationship between the parties from which an undue influence may be inferred, a court of equity will not interfere and *set aside* a contract, nor control the parties in attempting to enforce it at law.

The mere want of such a consideration for a *deed* as would be necessary to support a simple contract is not a sufficient ground for setting aside the obligation in a court of equity. Indeed, voluntary contracts have been enforced by decrees for specific performace. *Villers* v. *Beaumont*, 1 *Vern.* 100. *Beard* v. *Nuthall*, *id.* 427. *Bunn* v. *Winthrop*, 1 *Johns. Ch.* 329. *Osgood* v. *Franklin*, 2 *id.* 23. Where an executory contract is entered into for the *sale* of property, it is evident that the parties contemplated a consideration—a *quid pro quo;* and the inadequacy of *price* may be so gross that it will amount to evidence of fraud; but if a man make a voluntary conveyance of his property without any circumstance of fraud or un-

due influence beyond the mere fact of its being voluntary, it will bind him, though it may be void as against creditors and subsequent *bona fide* purchasers. The *promise* of a gift is void, but a gift *executed* cannot be recalled. The promise of a gift is void, because the law will not uphold a simple contract without a sufficient consideration ; but if one *covenant* that he will give another a sum of money, I know of no principle upon which he can be discharged from the obligation. *Fallowes* v. *Taylor*, 7 *T. R.* 471. 3 *Burr.* 1639. *Com. Dig. Fait. B.* 4, *b. note c.* The bond of Mr. *Eckford,* although it may have been given without consideration, was a valid obligation at the time it was executed ; and the subsequent statute must not be so construed as to annul the contract, either in whole or in part. There is nothing in the statute calling for such a construction. If a retrospective effect was at all contemplated by the legislature, they certainly did not intend that this statute should be applied in such a manner as to impair the force of pre-existing agreements. In this case the judge decided that the defendants might show the want or total failure of consideration. In that I think he erred ; but it is an error of which the plaintiff only can complain. Although what the defendants wished to prove was called indifferently the *want* and the *failure* of consideration, it was in truth the mere *want* of consideration. They did not propose to show that something was either given or promised to Mr. *Eckford* as an inducement for making the bond, which afterwards proved to be valueless ; nor that any supposed consideration passing between the two companies had ultimately proved worthless ; but the defendants wished to make out that there was in truth no pretence of consideration for the undertaking of Mr. *Eckford.* What would have been the consequence of admitting such evidence ? If allowed to have the same influence that it would upon an instrument without seal, the effect would be to annul the contract. It would not only affect the remedy, but it would reach and overturn the right itself. If the defendants were not at liberty to set up the total absence of consideration for the purpose of defeating the action entirely, they clearly could not

UTICA,
July, 1836.

show a partial want of consideration for the purpose of reducing the amount of damages.

I am strongly inclined to the opinion that the obligor was estopped by his deed from setting up the defence of a partial want of consideration. The evidence offered was to show that only $13,500 was paid by *The Western Company* to *The Life and Fire*, for the bond and mortgage of Gibbons. The bond of *Eckford* recites that *The Western Company* had *paid the money* for the bond and mortgage of *Gibbons*, and mentions the amount secured, viz. $25,000; and then the condition is, that *Gibbons* shall satisfy *the amount paid by the Western Company, being the amount mentioned in the bond of Gibbons.* Here was the admission under seal of a particular fact by the party, and I doubt whether he was afterwards at liberty to controvert it. *Willes*, 9. But it is unnecessary to decide that point in this case.

I think there is no sufficient ground for disturbing the verdict.

New trial denied.