Hojss'blowjee, C. J.
No less than twenty-one errors have been assigned upon the record in this cause; three of them upon objections to evidence, taken at the trial, which were overruled by the judge before whom the cause was tried ; and the remaining eighteen upon the charge delivered by him to the jury. Before I proceed to examine the alleged errors, I must enter my solemn protest against the manner in which the bills of exceptions in this case have been drawn, and in ■ which errors have been assigned on the charge of the court.
The judge, before signing the bills, ought to have seen that the exceptions, and the grounds of their exceptions, were precisely and only such as had been taken and stated at the trial of the cause; whereas, upon looking into the bills, no grounds or reasons for the exceptions, are stated; nor does it appear that the attention of the court was called to any specific point in the charge. The bills simply state the evidence offered ; that it was objected to, that the court sustained or overruled the objection, and that thereupon an exception was taken ; without stating in any way, what was the ground of the objection. So too as to the charge. The whole of it is excepted to in gross, without stating the ground of such exception. I do not now recollect whether I perused the bills in this case, or not before I ’sealed them. If I did not, it was because I took it for granted, that nothing would be assigned for error, but such matters as had been presented to my consideration in the court below, and iu relation to which I had specifically expressed an opinion.
Surely it will not be pretended, that it is sufficient for a party to say, “I object,” and then, if the judge overrules the objection, to take a bill of exceptions; and thereupon to assign and maintain error for reasons, which, if they had been presented to the judge, might have changed his opinion; or the ground of which objection might have been obviated at the moment. Such a doctrine would imply omniscience in a judge; or at least an *182 instant and intuitive perception of the law in every case. So too in relation to a charge. It is not sufficient for a party to say, “ I except to the charge;” and then, to assign error upon every clause and sentence of the charge. The exceptant must point out and sail the attention of the judge to the part or parts of the charge to which he excepts; and thus give him an opportunity of correcting himself, or of explaining and obviating the objections.
If such were not the rule of law, there would be no end of litigation; and a judge would never know how to charge a Jury. In a cause involving a variety of legal points, the force and operation of one depending upon the decision of another, and all to be settled in reference to the evidence, the Judge’s charge must be taken as an entire thing; it must be understood as a whole; his meaning must be collected from the whole charge taken together. But if a party may take sentence by sentence, separating them from each other, and assign error upon each of them in their abstract and disconnected meaning, as was done in this case, a Judge may be made to stultify and contradict himself. A clause or sentence, in relation to one point in a cause, taken by itself, and as if it constituted the whole charge, may be easily shown to be erroneous; but when read in connection with the rest of the charge, and explained and qualified by what precedes and follows, may be perfectly correct and complete as a whole.
To require a Judge, in stating every different aspect in which a case may be viewed, and all the different results that may be contingent on certain hypotheses, to repeat the “ ifs,” “ if this,” and “ if that,” would impose upon him an onerous and interminable task, and after all would leave him probably more unintelligible than if he put the case before the Jury upon a plain statement of the law of the whole case in a charge, which taken and considered as a whole, could not fail to be understood by the Jury.
These latter remarks have been made, because, errors have been assigned, in this case upon different clauses of the charge, treating them as separate and distinct annunciations of law, independent of the context, and unexplained and unqualified by what preceded and followed such clauses.
In Allen v. Smith, 7 Halst. 168, Chief Justice Ewing said, “ the ground taken on the motion for a nonsuit in the court be *183 low are specifically stated in the bill of Exceptions, and this, (the point then before the court) is not among them f and he adds, “ it is not competent for a plaintiff in error to draw into question, on a bill of exceptions, points not raised, nor objected to on the trial. Every motive of policy and convenience forbids.”
Mr. Justice Ford, in Coxe v. Field, 1 Green 218 speaks to the same effect; and he adds, “ a bill of exceptions is a statement of the point on which the oourt below gave an opinion,” so, 3 Bl. Com. 372. “ If the judge mistake the law, counsel may require him to seal a bill of exceptions, stating the point wherein he is suppose to err.”
This same doctrine was reiterated by this court in Williams v. Sheppard, 1 Green 78, and in Ludlam v. Broderick, 3 Green 275.
In Blinde’s lessee v. Longworth, 11 Wheat. R. 209, the law apon this subject, and the reasons of it are plainly indicated by Mr. Justice Thompson by whom the opinion of the court was delivered.
If a witness is called, or books of account, or any other matter is offered in evidence, and the adverse party interposes an objection, he must assign a specific reason why the witness or evidence ought not to be admitted and his bill of exceptions, if the evidence is received, ought to state the specific grounds of objection ; and on argument in error, he should be confined to that particular ground of objection, and not be at liberty to discuss other reasons for rejecting the evidence, which, if they had been assigned in the court below, might have been deemed sufficient by the judge, or obviated by the party offering the evidence. A contrary practice would be calculated to mislead the judge, and ensnare the opposite party.
In Van Gorden v. Jackson, 5 Johns. 440, 467 in error, the Chancellor says, “a bill of exceptions was given, not to draw the whole matter into examination again, but only the points tc which it was taken; and the party must lay his finger on those points.
In Fries v. Jackson, 8 Johns. 495, the same language is repeated, and the same chancellor, after stating the four exceptions that had been taken in that case, goes on to say, “ these points have been precisely stated in the court below, as reasons against *184 maintaining the action ; and on those points, in exclusion of all others, the opinion of the court is required.” In a subsequent part of that case, (page 575,) the chancellor says, that the review of a cause in error, upon a .bill of exceptions, is rigidly confined to the precise objections in the bill, and extends to no other. The same doctrine is strongly inculcated in Whiteside v. Jackson, 1 Wend. 418; Mann v. Eckford’s Exrs., 15 Wend. 511; and Willard v. Warren, 17 Wend. 259. These cases show that the party is not at liberty to make general objections at the Circuit, and then seek to overturn the decisions of the judge upon grounds which had hot been distinctly presented to his mind.
In the case now at - bar, the plaintiff has, by a prout, spread the, whole of the charge delivered to the jury on the record, and then, as I have already remarked, disjointed the charge, and assigned some seventeen or eighteen errors upon different clauses of it, and all this without having called the attention of the court below, to any of these supposed errors in the charge, and without its appearing on the bill, that those parts of the charge, now complained -of, were excepted to at the time. But that it may not be drawn into precedent, I beg leave here to state, that such a'practice, is not only dangerous to the rights of parties but subversive of the very principles upon which appellate jurisdictions are founded. It is converting a writ of error into a new trial upon the merits of the case, instead of a review of the legal points raised and discussed in the court below.
The Supreme Court of the United States has several times expressed its marked disapprobation of the practice referred to. In Evans v. Eaton, 7 Wheat. 426, Mr. Justice Story takes occasion to say, that the principal arguments are against the charge given by the Circuit Court in summing up the cause to the jury. The charge is spread in extenso upon the record, a practice which is unnecessary and inconvenient, and may give rise to minute criticisms, and observations upon points incidentally introduced for purposes of argument or illustration and by no means essential to the case. In causes of this nature, we think the substance only of the charge is to be examined; and if it appears upon the whole, that the law was justly expounded to the jury, general expressions, which may need and would receive qualification, if *185 they were the direct point in judgment, are to be understood in such restricted sense.”
This practice again came under the notice of the Supreme Court of the United States, in Pennock et al. v. Dialogue, 2 Peters 1, 14, and again in Carver v. Jackson, 4 Peters R. 80, in which, among other things, they say, “ We take this occasion to express our decided disapprobation of the practice of bringing the charge of the court below, at length before this court for review. It is an unauthorized practice, and extremely inconvenient both to the inferior and the appellate court. With the charge of the court to the jury upon mere matters of fact, and with its commentaries upon the weight of evidence, this court has nothing to do.” And Justice Story adds, “ that if, in the summing up, the court should mistake the law, that would justly furnish a ground for an exception. But the exception should be strictly confined to that misstatement, and by being made known at the moment, would often enable the court to correct an erroneous expression, or to explain or qualify it, in such a maimer as to make it wholly unexceptionable or perfectly distinct. We trust therefore, that this court will hereafter be spared the necessity of examining the several bearings of such charges.”
The doctrine, that a party shall not be heard in an appellate court upon a point not taken, or a matter not brought into discussion in the court below, and the exceptions to that rule, will be found stated by Spencer, Chief Justice, and Woodworth, Justice, in Beekman v. Frost, 18 Johns. 558. Spencer, Chief Justice, says, “ if counsel shall for the first time, raise a point here, which might have been obviated had it been made in the court below, he ought not to be permitted to do so ; ” and Woodworth, Justice, said, “ the rule is undoubtedly salutary, that no party shall be permitted to pass the court below in silence, and thereby make this a court of original, instead of an appellate jurisdiction : neither will this court listen to objections, which, if made in the court below, might have been removed, &c.”
So far have the courts gone upon this subject, as may be seen by the case last cited, that if a party will lie by, and suffer judgment to pass against him on a demurrer or special case, he will not be permitted to discuss it afterwards in error.
After what has now been said on this subject, and in the hope *186 that we shall not again have occasion to complain of a similar irregularity, I will proceed to examine the errors assigned in this case.
The first error assigned is, that the judge at the Circuit Court, upon the trial of this cause, admitted the plaintiff below to give in evidence a certain conversation between him and the defendant, prior to the execution of the lease from the defendant to the plaintiff. The assignment is as follows; that after the defendant in error, who was plaintiff below, had rested his cause, and after the plaintiff in error, who was defendant below, tad given in evidence the matters stated in the bill of exceptions and had rested his defence, the plaintiff below offered to prove, that in a conversation between the parties, prior to the execution of the lease mentioned in the bill of exceptions, the defendant below agreed that the education of his daughter at the plaintiff’s seminary proposed to be established on the premises, if the same should be taken and hired by the plaintiff, should go towards the payment of the rent to be reserved ; and also to prove that the defendant’s daughter was, in fact, subsequently educated at the same seminary for one year and three quarters of a year; that to this evidence the defendant objected, but the court overruled the objection, and thereupon ruled that the said matters were admissible in evidence, and that it was competent for the plaintiff below to prove any conversations between -the parties, either before or after the execution of the lease, going to show that the education of the defendant’s daughter by the plaintiff, at such seminary, should be allowed in satisfaction of rent, in whole or in part.
In order to understand the point of this objection, it is necessary to state, that this was an action of trespass, de bonis asportails, to which the defendant pleaded not guilty; that on the trial, the plaintiff proved the taking of the goods, as laid in the declaration, and rested; that the defendant then justified the taking, as for a distress for rent due him for the premises, and in support of that defence proved and gave in evidence an indenture of lease, executed by him to the plaintiff, by which it appeared that at the time of taking the goods, there was rent due him, for which he was entitled to distrain, and that the defendant then rested. That thereupon the plaintiff set up and offered to prove, that all the rent due to the defendant, at the time of the taking, *187 had been before that time paid or satisfied ; partly by the plaintiff’s bill for the education of the defendant’s daughter and partly by a check on the Rahway bank. In support of this allegation, the conversation above mentioned, was offered to be proved, and the evidence admitted. Hence it will be preceived, that the question raised by this assignment of error is, whether it was competent for the plaintiff to prove, as one circumstance amongst others going to establish the proof of payment of the rent, the conversations of the parties antecedent to the execution of the lease. It will not, or at least it ought not to be contended, that the plaintiff might not prove a mutual agreement to appropriate the school bill towards satisfaction of the rent, in any other way than by defendant’s receipt in writing for so much on account of rent, by the tuition of his daughter. On the contrary it must be admitted that the party was at liberty to prove payment by any facts and circumstances going to satisfy the jury, that the rent had been liquidated between the parties. The judge, in his charge to the jury, put this matter on the true ground. The evidence was not admitted or submitted to the jury, as proof of an agreement, by which the defendant was bound, either to send his daughter to the plaintiff’s school, or to allow her school bill, as so much paid on account of rent; but merely, as a circumstance, from which, in connection with other facts and circumstances, proved or to be proved on the trial of the cause, the jury might infer that the rent, by the mutual understanding of the parties, had been so liquidated. The objection, or rather the argument of counsel is, that the effect of this evidence was to vary the written contract, and make the rent payable by schooling the daughter, instead of in gold and silver, as provided for by the legal operation of the lease. But this is a mistake. It was neither the effect nor the object of the evidence, to vary or in any way control the written contract. On the contrary, it was offered for the purpose of proving one fact, which, in connection with others intended to be proved by the plaintiff below, might amount to evidence of payment of the rent; and in that point of view it was clearly competent evidence.
A man cannot distrain for rent, if he cannot maintain an action for it, and whatever the tenant might give in evidence in bar of such action, or in proof of payment, he may give in evidence *188 in an action of trespass by him against the landlord for levying a distress, to show that he had no right to distrain. Now surely in an action of debt for rent, the tenant might prove payment technically, that is in money ; or he might prove an accord and satisfaction, or a release, and that too, whether the lease is by parol or by deed. The defendant’s right then, to make a distress, depends upon his right to maintain an action ; but he could not maintain an action, if the rent had been paid, or if there had been an accord or satisfaction, nor can he change the issue between himself and his tenant, by making distress instead of bringing suit.
In Pynnel’s case, 5 Co. 117, it was held in an action of debt on bond, that a defendant might plead that he paid to the plaintiff a less sum than that mentioned in the bond, or that he delivered to the plaintiff a hawk or robe &c. in full satisfaction of the debt. The same doctrine is more fully and variously illustrated in Peytoe’s case, 9 Co. 79. In the same case we are told that accords are favoured in the law, and the reason is there given. To this point see also Watkinson et al. v. Stokes et al. 5 Johns. 387, 392. Would it not, upon principle and upon the authority of the cases cited, and many others to the same effect are in the books, have been competent for the tenant, in a suit against him for this rent, to have proved, that after the lease had been executed, or after the rent had become due, he had instructed the plaintiff’s daughter in satisfaction of the rent, and that such benefit had been accepted by the plaintiff in satisfaction thereof? I presume this will not be denied. But it is. objected that the conversation or agreement in this case took place during the negotiation for a lease and before it was executed, and that the moment the lease was sealed, it extinguished or blotted out all that had been said by the parties, in the progress of the negotiation. This is true, so far as respects everything that would be inconsistent with, or go to vary the terms of the lease but no further. If therefore the parol agreement, that the education of the daughter should go towards payment of the rent, was offered as a substantive defence in an action for the rent, or as a bar to the landlord’s right to distress, the evidence would be wholly inadmissible. The difficulty is created in the mind of counsel,'by considering an accord and satisfaction, as one entire thing. It is so when executed; but an *189 aooord is one tiling, and satisfaction or the execution of it is another. An aooord executory, that is an agreement that the debt- or shall give, and that the creditor shall receive a hawk or a horse in satisfaction of the debt, is no bar; but an aooord executed, that is the agreement carried into effect, is a complete bar: because the party has accepted the thing, in satisfaction : see 5 Johns. 392, and cases there cited. In this view of the subject, of what importance can it be, when the accord, that is the agreement, to do or give something in satisfaction, was made ? I can perceive none; for whether it was preliminary to making the lease, or after the rent became due, it would be equally inoperative ; it could not be pleaded or enforced in any way, unless the creditor chose to consummate the agreement by accepting the service or the thing in satisfaction. It is the acceptance in satisfaction, and not the time, when the accord or agreement to accept was made, that constitutes the essence and gist of the plea.
Suppose I owe a man one hundred pounds, for which I am going to give him my bond; but before it is executed, it is agreed between us, that if I give him a horse, he shall receive it in full satisfaction of the bond. Eow this agreement can never be pleaded in bar, of an action on the bond. But if I deliver the horse and he accept it in satisfaction, it is a good defence. It is not enough for me, however, to prove that I delivered and he accepted the horse ; I must prove that he accepted it in satisfaction of the bond. But how must this be done ? Can it be proved only by words spoken at the time of the delivery of the horse? May it not be proved from circumstances, or from conversation between the parties at other times, before or after the delivery?— may I not prove that before I gave the bond, he told me that he would accept the horse in satisfaction of it, as evidence to go to the jury, that when I delivered to him, and he accepted the horse, it was in satisfaction of the debt? In this view of the subject I cannot have a doubt, but.the evidence in question, was admissible. What influence it might or ought to have had with the jury is not to be settled here.
The Supreme Court of Errors of Connecticut, in Blinn v. Chester, 5 Day’s Conn. R. 358, fully sustains the view I have taken of this subject. The defendant offered to prove that at the time of making the note, the plaintiff offered to take his work as a *190 carpenter to the amount of the note, and that defendant agreed to perform the labor within the year. This evidence was ruled out, and the defendant confined to such facts as took place after the note was made. Upon a writ of error, the judgment was reversed, and the court, after stating the law upon the subject in accordance with what I have said, concludes by saying : “The time when the accord was entered into is wholly immaterial.— The acceptance in satisfaction, must be from its nature, subsequent to the execution of the note; it amounts to the plea of full payment, and if proved, will wholly defeat the plaintiff’s right of recovery.” I will conclude on this point,, by referring to a recent decision in the State of New York, Batterman v. Pierce, 3 Hill’s R. 171, in which it was decided, that a parol agreement, affecting the right of the parties, made at the time of executing the writing, may be given in evidence in an action on the written instrument, provided such parol agreement does not alter, modify or impeach, the written contract, but is consistent with, and in affirmance of it.
These considerations furnish a complete and sufficient answer to the fifth and seventh assignments of error. The objection taken by the counsel of the plaintiff in error, to those parts of the judge’s charge therein excepted to, is that the judge did not specify the time when such an agreement or consent as was mentioned by him, should have been made in order to be valid for the purposes alleged. The answer is, no matter when ; provided it was consummated and accomplished by the acceptance of the defendant below after the making of the lease, or the accruing of the rent.*
The second bill of exceptions is to the decision of the Circuit Court, admitting the plaintiff’s book of accounts to go in evidence to the jury ; and error is thereupon assigned.
What the ground was upon which the admission of the book in. *191 evidence was objected to, does not appear on the bill of exceptions ; and it is difficult therefore to ascertain the legal point decided by the court below, and upon which the opinion of this court is invoked. The objection could not have been for the want of proof; for it is expressly stated in the bill, that the book was proved to be the plaintiff’s book of accounts.
In the written argument of the counsel for the plaintiff in error, I do not find any allusion to this objection, and presume therefore that no reliance is now placed upon it, any further than it may be involved in the argument against the admission of the parol evidence above mentioned. If however the court was right in permitting the plaintiff below to prove payment, or accord and satisfaction, then the book of accounts was competent evidence; especially as it appears, by the bill of exceptions, that the schooling and services charged in it, were proved to have been furnished, by the testimony of a witness. There is nothing I think in this objection.
The third error assigned is, that the books of the Rahway bank were admitted in evidence.
This is not the first time that bank books have been admitted in evidence on trials between individuals in this state; although I am not aware that it has received the solemn decision of the Court. So too they have been admitted, on trials upon indictment against persons for over-drawing their accounts. Upon the most mature reflection however, I am of opinion the books were properly admitted. Where parties deal with each other by notes and checks on a bank, they make the bank their common agent or clerk ior keeping an account of the payment and appropriation of the moneys for which they are drawn; as much so, 3 think, as if two or more men should employ a common clerk to keep an account of their dealings with each other. Such is now the use made of banks, and the course of dealing with them, that if men who transact their mutual business through the agency of a bank cannot resort to its books to show the disposition that has been made of checks and notes passing between the parties, and how the proceeds have been applied; but must rely on the memory of bank clerks to prove such transactions, however remote, complicated or extensive such transactions may have been, it would often defeat the rights of parties and the fair administra *192 tion of justice. Such books are not, res inter alios acta, so far as they contain a record of the mutual dealings between the parties to the suit, in relation to their financial transactions with each other; but on the contrary they áre evidence on which each party relies, and may be considered as books kept by their common clerk. What better evidence can I produce of the payment of money to a man, than to show by the books of a bank in which he keeps an account, that on a certain day, I deposited to his credit a certain sum of money, which was afterwards entered in his own bank book, carried into his account with the bank, and drawn out by his checks ? I know of none.
But whatever doubt there may be of the propriety of admitting the books in evidence, I do not think the admission of them fatal in this case. The material fact that a certain check drawn by the plaintiff below, for a certain amount had been charged to the plaintiff and credited to the defendant was testified to by the cashier, and the books were only corroborative of that fact; and if upon the bill of exceptions the court can see that there was evidence sufficient to justify the verdict, and that the party was not prejudiced by the evidence objected to, the judgment will not be reversed.
The fourth error assigned is on that part of the judge’s charge to the jury, in which he instructed them, that the defendant below could not justify under the plea of the general issue • as to so much of the alleged trespass, as consisted in the seizing the goods that had been removed off the premises.
The charge on this point, was as follows : “As to such part of the goods as were seized at the store house, or elsewhere off the premises, the defendant stands here without any legal excuse notwithstanding there may have been rent due for which he had a right to-distrain. At common law a defendant could not justify or excuse himself for taking away the goods of another, under the plea of not guilty. If he intended to set up a legal or permissive right to take them, he was bound to set up his defence by a special plea, and could not give such special matter in evidence under the general issue. But the legislature by an act passed many years ago, in favor of landlords, has enacted that if he is sued in trespass by his tenant, for taking goods, he may give in evidence under the general issue, that he took them as a distress *193 for rent. But this privilege of the landlord extends only, by the terms and by the settled construction of the act, to goods seized on the leased premises. For although by the statute, if goods are clandestinely removed from the premises to prevent a distress, the landlord may follow and seize them within a certain time; yet if sued by the tenant for such seizure, in an action of trespass, the landlord must plead the matter specially as at the common law.”
Notwithstanding the ingenious criticisms of the plaintiff’s counsel on the phraseology of the statute, we think there is no error in this part of the charge.
The rule at common law, was, that where the act would prima faeie appear to be a trespass, any matter in justification or excuse, or done by virtue of a warrant or authority, must be specially pleaded (1 Chitt.pl. 492.) Hence the statute of 11 Geo. 2, c. 19 See. 1, which corresponds with the 13 See. of our own statute, giving the landlord the right to plead the general issue and give the special matter in evidence.
If we were now called upon, for the first time to settle the meaning of this section, it seems to me we should by every just rule of construction be compelled to limit the right of the defendant to plead the general issue, to cases in which goods had been seized on the premises; or at most to cases, where the landlord coming to distrain, and having view of the goods, the tenant removes them off the premises. (2 Inst. 232, 2 Bac. abr.: title distress, 247.) The question is, to what does the word “ thereupon,” used in the statute relate ? The answer is given on the very face of the section. Stript of its verbiage it reads thus: “ In all actions of trespass brought against any person entitled to rent, relating to any entry by virtue of this act upon the premises chargeable with such rent, or, (relating) to any distress, or seizure; or, (relating) to any sale or disposal of any goods, thereupon, it shall be lawful &c.” What can the word “ thereupon,” standing in this connection, refer to, if not to the premises chargeable with rent ? But counsel say, it refers to distress or seizure, and not to the premises; and the argument is that if it refers to the premises, then if the goods were seized on the land., but sold or disposed of, off it, the landlord in an action of trespass against him for such sale and disposal, would be confined to *194 his special plea. There are two answers to that criticism. First, no action of trespass would lie for sale or disposal, unless there had been an unlawful seizure; and if that seizure had been on the land, the defendant might plead the general issue. But again, if the word “ thereupon,” refers to the distress or seizure, then what do those words refer to ? Do they mean a distress or seizure upon the premises chargeable with rent, or my distress or seizure whatsoever ? If the latter, then the statute is a license to plead the general issue, in every ease of trespass de bonis asportatis, with leave to give the special matter in evidence. Upon such a construction, the statute must be considered as enacting,' that in every action of trespass, relating to an entry upon land, chargeable with rent; and in every case of trespass, for any distress or seizure of goods, the general issue may be pleaded, and the special authority be given in evidence. This will not be pretended. And yet this is the inevitable result of the construction contended for. It is sufficient however to say, that old as the statute is, no elementary writer, and no judge can be found who has so understood the statute. Mr. Chitty, in his first volume on pleading, page 495 says, “ a distress for rent, when made on the demised premises, may be given in evidence under the general issue — but if made off the demised premises, as on a common, or under a fraudulent removal, the defence must be specially pleaded ;” and the author then specifies the other cases, in which a justification must be specially pleaded. In Vaughan v. Davis, 1 Esp. R. 257, the question came directly before the court, and it was decided in conformity to the opinion I have expressed. This was in the reign of Geo. 3. in the year 1795, and has never since been questioned.
In Fourneaux v. Clark et al. in 4 Camb. N. P. R. 136, as late as the year 1815, Lord Ellenborough pronounced the same opinion. These cases are not cited as authority, but to show what has been the opinion and the uucontroverted opinion of other, and of very competent judges, on this point.
The fifth error assigned is answered by the closing remarks on the first assignment.
The sixth error assigned is, that the judge charged the jury, that the plaintiff might prove payment in money, in board and tuition of defendant’s daughter, or in any other valuable service, *195 or commodity; but did not tell them, that payment includes the idea of acceptance. This is precisely one of those criticisms that is so pointedly condemned by the Supreme Court of the U. States in the case of Evans v. Eaton. (7 Wheat. 426,) heretofore cited. But it is sufficient to say the court was not requested to give the legal definition of the word payment; and moreover, the meaning of the word payment, was sufficiently explained by other parts of the charge; and it is an impeachment of the common sense of the jury, and of mankind, to suppose that they do not understand that payment in money, or in any thing else by one party, always implies an acceptance of the money or goods, as payment by the other party.
The seventh assignment of errors is answered by the closing remarks on the first assignment.
The eighth error assigned is, that the court, after stating the manner in which the plaintiff had sought to prove the defendant’s consent that his indebtedness to the plaintiff should go towards payment of the rent, charged in substance, that from that evidence in connection with the fact that the defendant did after-wards send his daughter to the plaintiff’s school, the jury might infer that the defendant, after such schooling had been furnished had accepted the amount charged, as payment on account of rent. This is not a very just paraphrase of the part of the charge referred to. But admit it to be so, yet I see no error in it.
This, as well as the three preceding assignments, and several that follow, are based upon the idea, that the evidence of the conversation about the schooling of the daughter had been unlawfully admitted; or, that if that evidence proved a parol agreement or understanding, that the schooling, if the defendant sent his daughter to the plaintiff’s seminary, should go on account of rent, and that if after the lease was executed, the defendant did send his daughter to school, yet he would not be bound to allow it as payment on account of rent. This, from looking at the charge in extenso, appears to he precisely the point where the Circuit Court and the counsel for the defendant in that court differed on the trial of the cause. If therefore, I am correct in what has already been said on the admissibility, and the effect of that evidence, the ground of error in this, and several other of the assignments is taken away Whether there was any agree *196 ment, that if the defendant sent his daughter to school, the school bill should go towards the rent, was a question for the jury, and it was fairly put to them. If there was such an agreement or understanding between the parties, and if the defendant after-wards put his daughter to school, it is a legal and just inference in the absence of proof to the contrary, that her schooling was accepted by the defendant on account of rent. It would clearly be competent evidence in support of a plea of payment, had the defendant brought an action for the rent, and he cannot deprive the plaintiff of such evidence by making a distress instead of bringing an action.
The ninth and tenth assignments of error come within the same category as the last, and are disposed of by the observations just made.
In the eleventh, twelfth and thirteenth assignments, the matters set forth for error do not appear in any part of the charge, and therefore require no answer.
The fourteenth assignment is in these words “ the judge charged the jury that the burden of proof undoubtedly lies on the plaintiff to prove that the check was given by him and received by the defendant, in part payment of the rent. This however, like all other matters, may be proved by evidence more or less direct, that is by express, or by circumstantial evidence. If in fact, the defendant had no other lawful claim or demand upon the plaintiff, the question would seem to be at an end. The legal presumption in such case would be, that it was paid to him for rent; and the law would so apply it.” This is complained of as error in the gross; but the assignment gives us no intimation of the point wherein the error consists. Does the plaintiff in error complain that the judge erred in saying, that the onus probandi, lay on his adversary ? Or in saying that the fact in question might be proved by evidence more or less direct, that is by express or by circumstantial evidence ? Or in saying that if nothing but rent was due the defendant, the legal presumption would be that the check had been delivered and accepted on account of rent; and that in such case, the law would so apply it? In each of these particulars the charge was clearly correct; and if there is any latent error in the language of the court, the assignment has failed to bring it to our notice.
*197 This assignment is another striking illustration of the impropriety, spoken of by the Supreme Court of the United States, of bringing the whole charge upon the record. In this case it has been separated into shreds and patches, and thus the whole brought into review before this court.
The fifteenth assignment is liable to the same remark as that just made; but its object I presume is to subject to the opinion of this court, the charge of the court below on the subject of the application of payments. The judge charged the jury, that if the defendant below had other claims against the plaintiff beside the claim for rent, the defendant had a right to apply the check to such other claims, unless the plaintiff gave it to him in payment of rent and for no other purpose. That the general rule of law was, that he who pays, has a right to appropriate the payment; if he does not the receiver may; but if neither has made an appropriation of the money, then the jury are to apply it under the evidence in the cause, and the direction of the court. We see no error in this part of the eharge. In White v. Trumbull, 3 Green 314, this court decided, that if the debtor does not direct to which debt the payment is to be applied, the creditor may apply it as he pleases; but if neither appropriates the money the law must decide. But in that case the payment was applied pro rata ; because there was nothing in the case to show that either party could have any interest in discharging either liability in preference to the other. The debts were of the same nature, and recoverable only by suit at law. In this case the rent was a more onerous duty than any other, and subjected the plaintiff to distress, as well as suit at law.
In The United States v. Kirkpatrick, 9 Wheat. 720-737, the court say: “ the general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of the payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice,” and they add, “ It is certainly too late for either party to claim a right to make an appropriation after the controversy has arisen.” See also Seymour v. Vanslyck, 8 Wend. 404-416.
The sixteenth error assigned is, that the court charged the jury, that if the defendant had no other lawful claim against the plaintiff but the rent, they might infer, that the defendant receiv *198 ed the school bill on account of rent, from the fact that the amount of the check and the school bill, were just equal to the rent due. In this, and especially in view of the facts in the cause, and of the whole charge taken together we are of opinion there is no error.
The seventeenth objection is, that the judge in his charge said “ the whole question is, whether the rent was or was not paid by the school bill and the check.” In this there was no error. It was the whole question • for, if paid, then the defendant had no right to.distrain. What the judge meant by the word paid was sufficiently explained in other parts of the charge in which it is abundantly shown that the defendant’s acceptance of such payment was necessary.
In the eighteenth assignment the plaintiff in error complains, that the judge charged in substance, that if they found that the defendant had no other lawful claims but the rent against the plaintiff, they might find that it had been paid by the school bill and the check. There was no error in this, when this part of the charge is viewed in connection with the whole of it, and with the evidence in the cause.- This assignment of error, like the last, is but ringing the changes, upon the different branches of the charge, which may be done almost interminably.
The nineteenth assignment is precisely of the same character as the last. It is that the judge charged in substance, that if the defendant had received, or ought to have received, the check on account of rent, then they might find, that he had received the school bill on account of rent. It is proper however to say that no such sentiment, either in terms or in substance, is to be found in the charge. It is only a deduction in the pleader’s mind, which the jury, if men of common sense, and it is to be presumed they were, never could have reached, after hearing the evidence and. the whole of the charge. The play perhaps is intended to be on the words “ or ought to have received.” The jury in view of the whole case, could not have been misled by the use of the word “ought” in this connection. Whether there was anything due the defendant but rent, was a question in the cause, and if nothing else, then, the defendant ought in the absence of any evidence of an application of it to a different purpose to have received it on account of rent.
*199 The twentieth error complained of is that the judge charged the jury that if the defendant had failed to satisfy them that rent was due and that he had a right to distrain, they must find for the plaintiff; whereas it is said, the judge ought to have charged the jury that in order to find for the plaintiff, they must find that the defendant had accepted the school bill and check in payment of the rent. If what is above recited, was the whole of the charge, there might be some ground for error ; but when, as the fact is, the jury were told in other parts of the charge, in the most unqualified terms, that “ the whole question was, whether the check and school bill had been accepted by the defendant in satisfaction of the rent; and that if they had not been so accepted, they must find for the defendant, it is but waste of timo and words to urge such a ground of error.
In the twenty-first assignment, the error complained of is that the judge remarked to the jury, that the legislature had favored landlords more than any other creditors, and had put the law into their own hands and made the landlord judge and executive officer in his own case, and that it was questionable whether public policy did not require that the extraordinary remedy of the landlord should be taken away. That the landlord must act at his peril; and before he undertakes to make a distress he ought to be sure that rent is due him and that he can prove it beyond a reasonable doubt.
So far as the matter set forth in this assignment refers to the speculations of the judge on the policy of the law of landlord and tenant as it now stands, it is not the subject of a writ of error, Evans v. Eaton, 7 Wheat. 426, and so far as the judge in this part of his charge, stated that a landlord must act at his peril and ought to be sure that rent was due him and that he could prove it before he made a distress, the judge was clearly right.
The plaintiff in error having thus dissected the charge, and assigned error upon the several parts of it ; then assignment, sets out the whole charge in extenso, by a prout, and concludes by saying, “ in which said charge the plaintiff alleges there is error.” This is no assignment of error, and does not therefore require any answer from this court: Willard v. Warren, 19 Wend. 259.

Judgment affirmed with costs.

Cited in Potts v. Clarke, Spence. 538; affirmed, Oliver v. Phelps, 1 Zab. 608; cited in Asso. Jersey Co. v. Davidson, 5 Dutch. 418; Chaddock v. Vanness, 6 Vr. 520; Del., Lack, and W. R. R. Co. v. Dailey, 8 Vr. 528.

The matters charged were that if the defendant below agreed that the school bill should go towards the rent, and received the check on the same account, the rent was paid, no matter what other claims the defendant had against the plaintiff: and that it was no matter how much the defendant below was indebted to the plaintiff below unless the plaintiff could show an agreement or consent of defendant to allow such indebtedness as payment of the rent accruing to him.